UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

**FILED**
MAR 27 2007


CLERK

| | | |
|---|---|---|
| JENNIFER OLSON | ) | |
| PLAINTIFF, | ) | |
| VS | ) | COMPLAINT |
| FIRST SAVINGS BANK, | ) | |
| DEFENDANT. | ) | |

## JURISDICTION

(1) This is an action arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*.

(2) This Court has jurisdiction over Plaintiff's discrimination claims pursuant to 42 U.S.C. §2000e-5 (f)(3) and 28 U.S.C. §§ 1331 and 1343(4). Venue is proper in accordance with 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000-5(f)(3).

(3) Plaintiff Jennifer Olson is a resident of Sioux Falls, South Dakota.

(4) At all times pertinent to this action Defendant was operating banks in South Dakota, including a branch in Sioux Falls, SD where Olson was employed.

(5) Olson timely filed a charge of discrimination on August 8, 2006 and received a right to sue notice from the EEOC on March 6, 2007.

### COUNT ONE: SEXUAL DISCRIMINATION
(Title VII of the Civil Rights Act)

(6) Olson was employed with First Savings Bank since June 26, 1998.

(7) At the time of her termination, Olson was employed as a loan administrator in its Sioux Falls Branch.

(8) During her employment, Olson performed in a manner that met her employer's expectations.

(9) During her employment, Olson was discouraged from seeking promotions by her male supervisors while male employees with less experience or education were encouraged to apply for promotions.

(10) During her employment, Olson observed that Mutchler engaged in personal and sexual banter in the workplace with certain female employees who appeared to gain advantages in terms of employment opportunities, promotions, travel, job assignments and hours because of their relationship with Mutchler.

(11) During her employment, other employees frequently commented about Mutchler's unprofessional attention toward certain female employees of the bank.

(12) In 2005 and 2006, there were widespread stories among both male and female employees at First Savings Bank who had observed Mutchler's unprofessional behavior toward certain female employees, including allegations of inappropriate relationships, of inappropriate sexual commentary in the workplace, of an after-hours accident involving the company vehicle, of his inappropriate sexual remark about the sexual orientation of a prominent bank customer and of the workplace benefits enjoyed by his female friends in the workplace in terms of promotion, travel, hours and job duties.

(13) In March 2006, Olson complained to her supervisors about being passed over for training opportunities while male employees and Mutchler's female friends were selected.

(14) In the same general time frame, Olson became aware that Mutchler had presented another female employee with a sexually oriented cartoon that made the employee uncomfortable.

(15) After complaining to her supervisors about promotional opportunities and Mutchler's unprofessional behavior in the workplace, Olson was summoned to a meeting with HR director Karla Birgen.

(16) On March 29, 2006, Olson reported to Birgen that she believed that Mutchler's behavior created a hostile work environment for women and that Olson believed there was a marked disparity between the numbers of males and females in management within the company.

(17) To the best of her knowledge, Olson's complaints were never investigated.

(18) On March 30, 2006, Olson complained to her supervisor that she felt that the meeting with Birgen was retaliatory. Olson again complained that Mutchler's behavior created a hostile work environment for women and added that she wanted to find another job because of the work environment.

(19) To the best of her knowledge, Olson's complaints were never investigated.

(20) On April 7, 2006, Olson's supervisor told her that he had been instructed to give her a disciplinary write up for email usage but that he did not want to. The supervisor advised Olson that Birgen had told Mutchler that Olson was "spreading rumors" about his workplace behavior. When Olson mentioned that she wanted to quit, her supervisor informed her that "they have it in for you and are going to nit-pick you until you go" and advised her to quit because she would have no promotional opportunities and would be getting not any more raises.

(21) Olson decided not to quit and told her supervisor that she would not be giving her notice.

(22) In April, a new female employee was hired and assigned to do some of Olson's job duties.

(23) On April 27, 2006, Olson was summoned to a meeting with Mutchler and was chastised for "talking" about his relationship with a female employee even though other male employees, had also made comments about Mutchler's relationships with certain female employees and were not disciplined.

(24) To the best of Olson's knowledge, only female employees who complained to supervisors or HR about Mutchler's workplace behavior were disciplined for comments which males had also made about Mutchler's workplace behavior.

(25) On May 18, 2006, Olson was constructively discharged from her position.

(26) First Savings Bank permits a work environment where male bank managers, bank officers and the CEO make sexually offensive remarks and comments about the sexual lives and sexual orientations of various people associated with the bank including bank employees.

(27) Male employees at First Savings Bank enjoy greater opportunities for promotion than female employees at First Savings Bank.

(28) First Savings Bank has a disparate number of men in management positions compared to female employees.

(29) Male employees at First Savings Banks are not disciplined in the same fashion as female employees for identical behavior.

(30) First Savings Bank does not apply its sexual harassment policy equally to male and female employees.

4

(31) As a result of discriminatory treatment based on her gender, Olson suffered a constructive discharge, a loss of pay, benefits, employment opportunities and also suffered severe anxiety, humiliation and emotional distress.

(32) First Savings Bank's actions were willful, reckless and malicious.

COUNT TWO: RETALIATION
(Title VII of the Civil Rights Act)

(33) Olson reasserts her allegations in paragraphs 1-32 above.

(34) In March, 2006, Olson reported sexual discriminatory treatment in terms of promotional opportunities and work environment to her supervisors.

(35) On March 29, 2006, Olson reported sexually discriminatory treatment in terms of promotional opportunities, the disparity between males and females in management positions and work environment to the company HR director.

(36) On March 30, 2006, Olson complained to her supervisor that she felt that the meeting with Birgen was retaliatory. Olson again complained that Mutchler's behavior created a hostile work environment for women and added that she wanted to find another job because of the work environment.

(37) To the best of her knowledge, Olson's complaints were never investigated.

(38) On April 7, 2006, Olson's supervisor told her that he had been instructed to give her a disciplinary write up for email usage but that he did not want to. The supervisor advised Olson that Birgen had told Mutchler that Olson was "spreading rumors" about his workplace behavior. When Olson mentioned that she wanted to quit, her supervisor informed her that "they have it in for you and are going to nit-pick you until you go" and advised her to quit because she would have no promotional opportunities and would be getting not any more raises.

(39) Olson decided not to quit and told her supervisor that she would not be giving her notice.

(40) In April, a new female employee was hired and assigned to do some of Olson's job duties.

(41) On April 27, 2006, Olson was summoned to a meeting with Mutchler and was chastised for "talking' about his relationship with a female employee even though other male employees, had also talked made similar remarks Mutchler's relationships with certain female employees and were not disciplined.

(42) To the best of Olson's knowledge, only female employees who complained to supervisors or HR about Mutchler's workplace behavior were disciplined for comments which males had also made about Mutchler's workplace behavior.

(43) On May 18, 2006, Olson was constructively discharged from her position.

(44) First Savings Bank's efforts to encourage Olson to resign her position were the result of her repeated complaints about discriminatory treatment in the workplace.

(45) First Savings Bank's efforts to discipline Olson were the result of her repeated complaints about discriminatory treatment in the workplace.

(46) As a result of retaliatory treatment based on her sexual discrimination reports, Olson suffered a constructive discharge, a loss of pay, benefits, employment opportunities and also suffered severe anxiety, humiliation and emotional distress.

(47) First Savings Bank's actions were willful, reckless and malicious.

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

a. For a trial by jury on the merits of her claim;

b. For compensatory damages in such amount as the evidence at trial may show;

c. For other damages, including but not limited to, those damages allowed by 42 U.S.C. §2000 *et seq* , the Civil Rights Act of 1991, Public Law 162-166, and any other pertinent and applicable statute, rule or regulation, whether state or federal.

d. For punitive damages in such an amount as the evidence at trial may show;

e. For costs and disbursements incurred herein, including prejudgment interest and reasonable attorney fees, and for such other and further relief as the Court may deem just.

Dated this _24_ day of March, 2007.

JOHNSON EKLUND LAW OFFICE

_____
Stephanie E. Pochop
P.O. Box 149
Gregory, SD  57533
Attorney for Plaintiff